UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KIMONI L. RUSSELL, | ) | |
| Petitioner, | ) | |
| vs. | ) | Case No. 12-0647-CV-W-DW-P |
| MICHAEL BOWERSOX, | ) | |
| Respondent. | ) | |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Kimoni L. Russell, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 25, 2012, seeking to challenge his 2008 conviction and sentence for robbery in the first degree, which were entered in the Circuit Court of Nodaway County, Missouri.

The petition raises two grounds for relief: (1) that there was insufficient evidence at trial to support a conviction on a theory of accomplice liability; and (2) that trial counsel was ineffective for failing to investigate and present evidence of innocence. Respondent contends that ground 1 is without merit, and ground 2 is procedurally defaulted.

**SUMMARY OF THE FACTS**

On appeal from the denial of his Rule 29.15 motion, the Missouri Court of Appeals summarized the facts as follows:

> On November 7, 2007, [petitioner] drove to a Dollar General Store ("DG") in Mound City, Missouri (accompanied by Walter Ross, Ashley Ross, and a fourteen-year-old juvenile, "C.C."). n.1
>
> > n.1 The initials of the juvenile's name are used to protect identity.
>
> [Petitioner] parked the car 80-100 yards behind the store. Walter Ross and C.C. exited the car and entered the DG store. [Petitioner]

and Ashley Ross remained in the car. Once inside the store, Mr. Ross approached the cash register and pointed a gun at the cashier and demanded that she give him all the money. After the cashier handed Mr. Ross the money from the register, he and C.C. exited the store and ran back to [petitioner's] car. The two of them got into the car, and [petitioner] drove away. An officer with the Missouri State Highway Patrol, having been advised of an armed robbery, saw [petitioner's] car driving on I-29 highway and attempted to stop the vehicle. When Mr. Ross noticed the police car behind them, he told [petitioner] that he was going to shoot the officer. [Petitioner] told Mr. Ross to throw the gun out of the window so that they "wouldn't all go to jail for it." After Mr. Ross threw the gun out the window, [petitioner] pulled the vehicle over.

> The officer ordered [petitioner] and Mr. Ross to exit the vehicle and lay face down on the shoulder of the roadway. [Petitioner] initially complied, but when he observed Mr. Ross approaching the officer with a knife, [petitioner] got up and began to approach the officer. At that point, back-up law enforcement officers arrived on the scene, and [petitioner] got back on the ground. One of the officers asked [petitioner] what he did with the gun, and [petitioner] replied, "How is it going to help me if I tell you?" He also stated to the officer that he had "been through this before." Officers discovered a .38 caliber handgun located beneath the rear seat of the vehicle. All four individuals were arrested and transported to the sheriff's department. [Petitioner] was charged with first-degree robbery, armed criminal action, and unlawful use of a weapon. [Petitioner] was tried by the court, without a jury, and convicted of robbery in the first degree (on a theory of accomplice liability), but he was found not guilty of the other charges. In June 2008, [petitioner] was sentenced to fifteen years' imprisonment.

(Respondent's Exhibit L, pp. 2-3).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254

–2–

(e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

### **GROUND 1**

In ground 1, petitioner contends that the evidence at trial was insufficient to support conviction on a theory of accomplice liability. Review of this claim is extremely deferential to the state courts. Constitutionally sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

On direct appeal, the Missouri Court of Appeals held as follows:

> When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a "super juror" with veto powers, but gives great deference to the trier of fact. Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. In applying this standard, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. Great deference is given to the trier of fact. The inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

–3–

> whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Woods*, 284 S.W.3d 630, 638-39 (Mo. App. W.D. 2009) (citations and internal quotation marks omitted).

Section 569.020.1 states that

> [a] person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
>
> > (1) Causes serious physical injury to any person; or
> >
> > (2) Is armed with a deadly weapon; or
> >
> > (3) Uses or threatens the immediate use of a dangerous instrument against any person; or
> >
> > (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

[Petitioner] was charged under a theory of accomplice liability. "The law of accessory liability emanates from statute, as construed by the courts." *State v. Barnum*, 14 S.W.3d 587, 590 (Mo. banc 2000). Section 562.041.1(2) states that

> [a] person is criminally responsible for the conduct of another when. . . [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

"To convict [petitioner] of robbery in the first degree under a theory of accomplice liability, the State must prove the commission of the elements of the crime charged by a principal with 'affirmative participation' by [petitioner] to aid the principal

in the commission of the crime." *State v. Smith*, 108 S.W.3d 714, 718 (Mo. App. W.D. 2003). "Accomplice liability is based on the premise that all persons who act in concert to commit a crime are equally guilty." *Id.* "A person who acts with another with common intent and purpose in the commission of a crime is guilty, whether he is a principal or merely abets the crime." *May*, 71 S.W.3d at 183.

However, "[e]vidence that an accused had an *opportunity* to aid and encourage another in the commission of a crime merely raises a suspicion of guilt and is insufficient to sustain a conviction." *Smith*, 108 S.W.3d at 719. "To make a submissible case of aiding and abetting, the evidence must show that the defendant associated himself or herself with the venture or participated in the crime in some manner." *Id.* "Any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *May*, 71 S.W.3d at 183.

In this case, [petitioner] does not dispute that the State proved the necessary elements of robbery in the first degree as to the principal, Walter Ross. We conclude that it also established [petitioner's] liability for Ross' [sic] offense as an accomplice.

"[C]ourts have found that the following circumstances may support the inference of affirmative participation by an accomplice: presence at the crime scene; flight therefrom; association or companionship with others involved before, during, and after the crime; conduct before and after the offense; knowledge; motive; and a defendant's attempt to cover up his involvement." *Smith*, 108 S.W.3d at 719-20 (citations omitted).

[Petitioner's] overarching argument on appeal is that "there was no evidence presented at trial that there was any prior plan to rob the Dollar General Store before Mr. Ross pulled his weapon out and demanded money." Br. at 16. However, while the State may have presented no direct evidence of a "prior plan" to rob the store, the circumstantial evidence was sufficient to support the fact-finder's determination that [petitioner] was an active participant in the robbery.

To begin with, [petitioner] does not dispute that he knew Ross prior to the incident in question and had been driving with him from Kansas City, and thus had "association or companionship with others involved [in the robbery] before. . . [the] crime." *Id.* Indeed, according to [petitioner's] own testimony Ross' [sic] entry

–5–

into the Dollar General Store was in response to [petitioner's] request: [petitioner] testified that he was experiencing car problems immediately prior to the robbery, and that he asked Ross to go into the Dollar General Store to get oil for [petitioner's] car.

It is also significant that [petitioner] did not pull his car up to the front of the Dollar General Store – as would be common for lawful patrons – but instead parked his car "80 to 100 yards. . . from the back of the store," and 150 to 200 yards from the store's front entrance (where parking was available). Tr. 53. The individual who witnessed the parked vehicle and recorded its license plate number testified that [petitioner's] car "was down the alley from the Dollar General." *Id.* Further, that individual testified that during the five minutes in which he observed the vehicle, the two individuals sitting inside it did not get out, and the hood was not raised, Tr. 53-54 – both circumstances which a fact-finder could find inconsistent with [petitioner's] claim that he was stopped in order to work on his car. The witness testified that he noted that car and its occupants because "I just thought that was odd because there's nothing around there to be parked there." Tr. 55. Moreover, despite [petitioner's] professed need for engine oil, he admitted that there was a gas station at the point where he exited the highway, although he claimed not to have seen it until he returned to the highway after the offense. Tr. 105.

Events following the robbery also support the conclusion that [petitioner] was an active participant in the crime. After Ross robbed the store, Ross and [C.C.] returned to [petitioner's] car; according to passenger Ashley Ross, "[i]t was an argument going on when they got back inside the vehicle because my best friend [C.C.] said Walter robbed the place." Tr. 71. [Petitioner] then drove away from the crime scene. "Aider participation is proved if it appears that the defendant waited in a vehicle and assisted the perpetrators of the crime in making their escape." *State v. Briscoe*, 646 S.W.2d 424, 428 (Mo. App. W.D. 1983). While [petitioner] testified at trial that he was "shocked" and "scared" when he allegedly first learned of the robbery, the fact-finder was free to disregard [petitioner's] self-serving explanation, and instead conclude that he knowingly enabled the escape of someone he knew had just committed a felony. *State v. Smith*, 185 S.W.3d 747, 759 (Mo. App. S.D. 2006) ("The jury is not bound by any self-serving claims made by Appellant and is entitled to reject any or all of his testimony as false."

Passenger Ashley Ross also testified that as they drove away from

the crime scene, [petitioner] "told Walter to throw [the gun] out the window so we wouldn't all go to jail for it." Tr. 73. [Petitioner] himself testified that he told Ross, "'Man, throw the gun out the window. They ain't going to do nothing. They're probably just going to pull us over and ask questions and then let us go.'" Tr. 99. While [petitioner] testified that he told Ross this after Ross said he was going to shoot the police officer who was pursuing them, a reasonable fact-finder could find, instead, that [petitioner's] motive was to conceal the offense in which he was a participant. "[C]onduct before and after the offense that 'tends to show a consciousness of guilt by reason of a desire to conceal the offense or the accused's role therein' may create an inference of affirmative participation." *State v. Parsons*, 152 S.W.3d 898, 903 (Mo. App. W.D. 2005) (citation omitted); *see also, e.g.*, *State v. Edwards*, 30 S.W.3d 226, 232 (Mo. App. E.D. 2000) (finding evidence sufficient to support accomplice liability where, *inter alia*, "Appellant facilitated [other perpetrators'] escape from the crime scene by speeding away," and "disposed of the weapon by instructing his girlfriend to get rid of it"). n.4

> n.4 We also note that the officer who initially pulled [petitioner's] vehicle over testified that, although [petitioner] initially complied with the officer's command to lie face down on the pavement, [petitioner] got up and approached the officer as the officer was attempting to forcibly restrain Ross. Tr. 60. [Petitioner] did not comply with the officer's command to lie back down, but did so only after backup officers arrive [sic]. Tr. 69. A fact-finder could conclude that [petitioner] was intending to assist Ross in his altercation with the officer, but thought better of it when reinforcements arrived.

In arguing that this evidence was insufficient, [petitioner] highlights other facts in an attempt to demonstrate that he was not a knowing participant in the crime. For example, [petitioner] emphasizes that Ross was (1) "under the influence of drugs or alcohol," and (2) robbed the store with [C.C.] (who was fourteen years old at the time). [Petitioner] argues that these facts "only bolster[] the idea that this robbery was not planned." Br. at 16-17. But under the applicable standard of review, we must disregard evidence, and inferences from the evidence, which are contrary to the trial court's judgment. In any event, the fact that the robbery may have been poorly conceived (and ultimately unsuccessful) does little to negate [petitioner's] liability for aiding

–7–

and abetting it, even if believed.

(Respondent's Exhibit E, pp. 3-7).

The resolution of ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2]

Ground 1 is denied.

## **GROUND 2**

In ground 2, petitioner contends that trial counsel was ineffective for failing to investigate and present evidence of innocence, specifically in the form of Walter Ross's affidavit in which Ross "specifically admitted to solely committing the crime of robbery in the first degree, which plainly exonerates petitioner from the charge of acting with another..." (Doc. No. 2, p 17). Respondent correctly maintains that ground 2 is procedurally defaulted.

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

–8–

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner did not raise ground 2 either on direct appeal or in petitioner's appeal from the denial of his Rule 29.15 post-conviction motion even though he did raise other claims of ineffective assistance of counsel.[3] Therefore, ground 2 is procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any explanation for why this ground was not pursued either on direct appeal or on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to

---

[3]Petitioner raised the following four claims of ineffective assistance of counsel in his appeal from the denial of his Rule 29.15 motion: "trial counsel was ineffective for failing to: 1) call a witness [C.C.] to testify in support of his "duress" defense; 2) cross-examine a witness [Ashley Ross] to corroborate his testimony that he did not plan the robbery and that he acted under duress; 3) present evidence [his mother's testimony] regarding his motor vehicle problems; and 4) notify the trial court of an alleged violation of the witness exclusion rule [concerning State's witnesses]. (Respondent's Exhibit L).

–9–

demonstrate cause for his procedural default.[4] As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995).

In ground 2, petitioner claims he is actually innocent. As new evidence of his innocence, he points to an affidavit by Mr. Ross that petitioner allegedly gave to his trial counsel before the trial, but that counsel never presented as evidence. Petitioner claims that because Mr. Ross claims to have acted alone, petitioner cannot be guilty of robbery in the first degree. Petitioner asserts that he gave the affidavit to trial counsel before the trial, and the affidavit itself is dated April 14, 2008 – more than four years ago. Because petitioner has not come forward with new evidence that was not available to counsel prior to or at the time of trial, he does not meet the first prong of the Schlup standard.

Petitioner has failed to show cause for his default of ground 2. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of ground 2 is barred.

Ground 2 is denied.

---

[4] Because petitioner does not allege ineffective assistance of post-conviction counsel as cause for his procedural default, Martinez v. Ryan, 132 S.Ct. 1309 (2012) does not apply.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

  /s/ Dean Whipple
DEAN WHIPPLE
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  November 27, 2012.